IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES : | |
| : | Criminal No. 1:21-cr-00048 (ABJ) |
| v. : | |
| : | |
| DENNIS SIDORSKI : | |

<u>DEFENDANT'S SENTENCING MEMORANDUM</u>

Dennis Sidorski, through undersigned counsel, respectfully urges the Court to suspend a sentence and place Mr. Sidorski on a period of probation. Such a slightly below guidelines sentence is sufficient but not greater than necessary to reflect the seriousness of, and provide just punishment for, the offense of disorderly and disruptive conduct at the Capitol building; avoids unwarranted sentencing disparity; affords adequate deterrence, and takes into account Mr. Sidorski's personal history and characteristics. *See* 18 U.S.C. 3553.

Mr. Sidorski neither participated in nor cheered on any violence taking place at the U.S. Capitol. He entered the U.S. Capitol through the then-open Senate Wing door. Videos capturing Mr. Sidorski inside the Capitol show him walking quietly through the building neither participating in nor encouraging any property destruction, and not participating in any chants/taunts to law enforcement.

Mr. Sidorski cooperated fully with law enforcement both at the time of and following his arrest. Mr. Sidorski spoke at length with police on the day of his arrest, telling police among other things about his sincere regret at having been involved in the events of January 6. Mr. Sidorski gave his phone to police; opened it for them to see, and showed police the videos he himself had taken of the events on January 6. While Mr. Sidorski was processed and appeared in Court, he allowed law enforcement to keep his phone, which police later returned to Mr. Sidorski's wife. Subsequently, at the Government's request, Mr. Sidorski met again with law

1

enforcement to discuss both his Facebook and Parler accounts.  His cooperation with law enforcement demonstrates that Mr. Sidorski is sincerely remorseful for participating in the events of January 6.

  <u>3C1.1 Enhancement is Not Warranted</u>

The statement of offense in this case includes the fact that Mr. Sidorski threw away his "American Supremacist" sweatshirt after seeing it on footage from January 6, and that in the aftermath of the protests, Mr. Sidorski deleted his Facebook account.  Mr. Sidorski did not delete his Parler account, which contains the statements included in the Statement of Offense.  In addition, the plea agreement included the Government's stated intention to seek a 2 point enhancement for this alleged "obstruction of justice."  Nonetheless, the initial Presentence Report [hereinafter "PSR"] appropriately concluded that no enhancement under 3C1.1 was warranted.

Just as the initial PSR concluded, the 2 point enhancement for "obstruction of justice" is inappropriate here.

The U.S. Sentencing Commission specifically addresses "avoiding [] arrest" as behavior that "DOES NOT warrant application of this adjustment." U.S.S.G. section 3C1.1 app. Note 5(D) (emphasis added).  *See also, e.g., United States v. Bliss,* 430 F.3d 640, 646 (2nd Cir. 2005) (defendant's conduct -- fleeing to another state, adopting an alias, and living for a year prior to apprehension -- insufficient to justify a 3C1.1 enhancement; "flight [is] a natural attempt to avoid apprehension, not a willful attempt to impede or obstruct justice within the purview of section 3C1.1").

Moreover, the Government is well aware that Mr. Sidorski deleted his Facebook account prior to his arrest.  Mr. Sidorski spoke at length with police on the day of his arrest; telling them

among other things that he had deleted his Facebook account as a result of the harassment thereon following Mr. Sidorski's photo being shown on the news.  Further, on the day of his arrest Mr. Sidorski gave his phone to police; opened it for them to see, and showed police the videos he himself had taken of the events on January 6.  While Mr. Sidorski was processed and appeared in Court, he allowed law enforcement to keep his phone which officers later returned to Mr. Sidorski's wife.

Subsequently, at the request of the Government, Mr. Sidorski met again with law enforcement to discuss both his Facebook and Parler accounts.  Because the Government waited until the summer of 2021, to request this meeting, too much time had elapsed since Mr. Sidorski deleted his Facebook account for him to have the ability to reinstate that account.  Although his Parler account had since lapsed, Mr. Sidorski restored it in order to allow police to examine his Parler account.

Had the Government made their request more promptly following the deletion of his Facebook account, Mr. Sidorski could and would have likewise reinstated the Facebook account for the Government's perusal – just as he willingly provided his phone to law enforcement on the day of his arrest and just as he restored his Parler account.

There is simply nothing in Mr. Sidorski's conduct to support an obstruction of justice enhancement.  If anything, Mr. Sidorski deserves credit for the extent and degree to which he cooperated with law enforcement following his arrest.

It is somewhat alarming that the U.S. Probation Office has become such an auxillary to the prosecution that based upon nothing more than the Government's request for a sentencing enhancement, the U.S. Probation Officer is prepared -- apparently without conducting even rudimentary research on the applicability of the enhancement requested -- to reverse its position

and grant the Government's requested sentencing enhancement. The Court should take this into account in determining whether or not to follow the U.S. Probation office's sentencing recommendations, among other things.

<u>The Court Should Reject the Final PSR's Determination to Adopt the Government's Objection and Assign a 3 point Increase for "Physical Contact" Under 2A2.4.(b)(1)(A)</u>

The statement of offense in this case includes the fact that Mr. Sidorski, while on the opposite side of a barrier from the officer and surrounded by a shoving, moving, jostling crowd, "placed his left hand on [the] officer's left shoulder and left arm for a 3 second period" while outside the Capitol. Moreover, the plea agreement included the Government's stated intention to seek a 3 point increase for this physical contact pursuant to 2A2.4(b)(1)(A). Despite all this, the initial PSR appropriately concluded that no such increase was warranted.

Just as the initial PSR concluded, the 3 point 2A2.4(b)(1)(A) increase is inappropriate here. A YouTube video captures the conduct at issue. That video shows Mr. Sidorski on the opposite side of a barrier from an officer who is engaged in a physical struggle with unrelated protestors. *See* Exhibit 1. For what appears to be about 2 seconds, while Mr. Sidorski is shoved and jostled by the crowd, Mr. Sidorski's left hand reaches out and briefly touches the armored and clothed arm of a police officer.

Section 2A2.4 provides that "if the offense involved physical contact or a dangerous weapon [] was possessed and its use was threatened, increase by 3 levels." The offense for which Mr. Sidorski is being sentenced is disorderly and disruptive conduct at the Capitol. Mr. Sidorski's disruption of government business is the conduct being punished. The roughly 2 second physical contact across a barrier with an officer who neither tried to nor in no way restricted Mr. Sidorski's disruption of Government business, does not amount to physical contact "involved in" the offense.

The enhancements contemplated by U.S. Sentencing guidelines section 2A are concerned with assaults and assaultive conduct which assist in carrying out an offense. That Mr. Sidorski's left arm came into contact with the clothed and armored left arm of an officer amidst a jostling, shoving, moving crowd for roughly 2 seconds while the men were separated by a barrier, is not the type of assault nor assaultive conduct which even could have – much less did – assist Mr. Sidorski in carrying out a disruption of Government business.

Moreover, it is not at all clear from that very brief contact that Mr. Sidorski could tell that it was a police officer he touched, nor that he intended the contact with the officer. Just as easily in the jostling, moving, shoving crowd, Mr. Sidorski could merely have been trying to steady himself.

To serve as a basis for the 2A2.4(b)(1)(A) enhancement, physical contact must be intentional. *See, e.g., United States v. Jackson,* 728 Fed. Appx. 969 (11th Cir. 2018)(evidence that Defendant dragged officer several feet, running over his foot after hitting him with his car, was sufficient to establish that Defendant intended to injure officer, thus supporting 2A2.2 enhancement); *United States v. Beltran-Higuera,* 642 Fed. Appx. 780 (9th Cir. 2016) (intentional accessory after the fact to co-defendant's aggressive, violent resistance of arrest supported 2A2.4(b)(1)(A) enhancement); *Cf. United States v. McKeiver,* 982 F. Supp. 848 (D. Fla 1997) (only defendant-initiated physical contact can support 2A2.4(b)(1)(A) enhancement; officer-initiated contact, among other things, cannot be established as contact intended by the defendant).

Furthermore, the type of physical contact which typically supports an enhancement under U.S.S.G. section 2A2 is far and away more egregious and potentially harmful than is the roughly 2 second contact amidst a jostling crowd at issue here. *Compare, e.g., United States v. Milliron,*

984 F.3d 1188 (defendant threw Molotov cocktails at police vehicles which were pursuing his own fleeing vehicle); *United States v. Jackson,* 728 Fed. Appx. 969 (11th Cir. 2018)(defendant dragged an officer several feet, running over his foot, after hitting the officer with defendant's car); *United States v. Yazzie,* 704 Fed. Appx 767 (10th Cir. 2017)(drunk driving head-on collision injured mother and three children warranting 2A2.2 enhancement).

Because the physical contact was exceedingly brief, innocuous, and in no way presented any danger to the officer, the enhancement is not appropriate.

A  Probationary Sentence Avoids Unwarranted Sentence Disparity

The conduct at issue here: disorderly and disruptive conduct at the Captiol in violation of 18 U.S.C. 1752(a)(2), is similar to -- and in many cases far less egregious than -- the conduct at issue in many cases in which this Court has imposed probationary sentences. *See, e.g., United States v. Jenny Cudd,* 21-cr-0068 (TNM).

Ms. Cudd was sentenced to probation following her guilty plea to 18 U.S.C. 1752(a)(1). Having travelled from Texas to Washington, D.C., Ms. Cudd prepared for violence by wearing a bulletproof sweatshirt; was undeterred by overturned bike racks she had to cross in order to enter the Capitol, and ultimately scaled a wall to gain entrance to the Capitol. Ms. Cudd admitted to pushing against police while yelling "go" and "charge" to reach the entrance of the Captiol, and remained in the Capitol for 20 minutes despite hearing loud banging and feeling the effects of tear gas.  Upon exiting the Capitol, Ms. Cudd remained on Capitol grounds for 20 min - 1 hour watching clashes with law enforcement. *Cudd* Gov Sent. Memo at 1-2.

While inside the Capitol, Ms. Cudd's social media posts include the following statements indicative of her intent to impede and disrupt the orderly conduct of Government business:

6

>…we get the news that Pence betrayed us.  He had way more power, and he wasn't willing to exercise it. And when Pence betrayed us is when we decided to storm the Capitol;
>
>So we get to the Capitol and some of the patriots had already broken down all of the barricades, and they had literally ripped our the fence … pushing and pushing and pushing, and we got the police to back off [] And we just pushed and pushed and pushed and pushed and yelled 'go' and yelled 'charge' and on an on and on.

*Cudd* Gov. Sent. Memo at 10.

>After her involvement in the events of January 6, Ms. Cudd posted on social media:
>
>(1) We didn't vandalize anything. But we did.  We did, as I say that.  We did break down the Nancy Pelosi's office door and somebody stole her gavel and took a picture sitting in the chair flipping off the camera; and
>(2) I'm proud of everything that I was a part of today. And I'll be proud of everything that I'm a apart of at the next one.

*Cudd* Gov. Sent. Memo at 2-3.

In an interview on January 8, 2021, Ms. Cudd repeated "I would do it again in a heartbeat because I did not break any laws.  I went inside the Capitol completely legally, and I did not do anything to hurt anybody or destroy any property. So, yes, I would absolutely do it again." *Id.* at 2.

The following day, Cudd posted about marching toward the Capitol. According to a newspaper in Texas, at approximately 12:30 p.m., Cudd posted a live video to social media in which she stated that she was about 3 miles from the Capitol, that she intended to convene with the Proud Boys – with whom Ms. Cudd was in contact on and around January 6 -- at the Capitol, and that she was wearing a bulletproof sweatshirt. The newspaper also reported that Cudd noted "lots of armed patriots" while on her way to the Capitol. The same newspaper reported that, at approximately 1:30 p.m., Cudd posted to social media, "we are charging the capital (sic)." *Cudd* Gov. Sent. Memo at 4.

Unlike Ms. Cudd, there is absolutely no evidence that Mr. Sidorski was aware of, much less prepared for, the possibility of violence.  Unlike Ms. Cudd, Mr. Sidorski did not push any police officer – much less while yelling "go" and "charge" -- in order to gain entrance to the Capitol.  Mr. Sidorski was also immediately remorseful for his involvement in the events of January 6, among other things leaving Capitol grounds immediately; taking down his Facebook account over the embarrassment he felt at the outcry of so many Facebook friends over his photo on the news in connection with the events of January 6.  At and following his arrest, Mr. Sidorski's contrition as evidenced by his cooperation with law enforcement, is in stark contrast with Ms. Cudd's continued public rhetoric.

Likewise, Mr. Cordon was sentenced to 12 months of probation following his guilty plea to 18 U.S.C. 1752(a)(1) in *United States v. Kevin Cordon,* 21-cr-00277 (TNM).  Mr. Cordon, who was wearing body armor and carrying a gas mask,[1] climbed through a broken window and was videotaped walking around and entering the Crypt.  Upon exiting the Capitol, Mr. Cordon gave an interview during which he stated among other things: "We're not gonna take this [stolen election] lying down.  We're standing up and we're taking our Country back.  This is just the beginning."

Mr. Sidorski wore no body armor and did not carry a gas mask.  Unlike Mr. Cordon, Mr. Sidorski walked through a then open door to enter the Capitol, and gave no interview bragging about his participating in the events of January 6.

Another case in which a 1752(a)(1) plea resulted in probation is *United States v. Jeffrey Witcher,* 21-cr-235 (RJL).  Mr. Witcher pled guilty to entering and remaining in the Capitol Building pursuant to 18 U.S.C. 1752(a)(1), after being captured on video travelling to multiple

---

[1] *See United States v. Dana Winn,* 21-cr-139 (TNM) Gov. Sent. Memo at 19.

locations inside the Capitol including the Crypt, where violence between rioters and law enforcement was occurring around him, to include rioters overrunning the police line. *Witcher* Gov. Sent. Memo at 2.  Mr. Witcher remained inside for about 20 minutes, during which time he taunted law enforcement with chants including "Do or die!", "Our House!", and "Don't be a traitor!" *Id.* at 2; 10.  Mr. Witcher was sentenced to a 12 month period of probation.

Mr. Witcher was "close enough to the initial breach" of the Capitol building "that he would have seen the forcible entry and law enforcement's attempt to prevent the rioters from entering." *Id.* at 10-11.  In a video he recorded while inside the Capitol, Witcher stated "I am in the White House! We crashed this! Our house! We did it! …" *Id.* at 4.  Further, Witcher admitted to deleting videos and photographs from his phone, on his way home to Texas after the protest.

Unlike Mr. Witcher, Mr. Sidorski walked through a then-open door to the Senate Wing door long enough after that door had been kicked in that there is no reason to think that Mr. Sidorski saw the door be kicked in.  Moreover, footage of Mr. Sidorski inside the Capitol shows him quietly walking about while not engaging any law enforcement officer in any way – verbally or otherwise.  Just like Mr. Witcher, Mr, Sidorski cooperated with law enforcement following his arrest.

Dana Winn was sentenced to 10 days in jail, to be served on weekends, following his guilty plea to 18 U.S.C. 1752(a)(1) in *United States v. Dana Winn,* 21-cr-00139 (TNM).   Mr. Winn travelled from Florida to D.C. bringing with him a flag pole to "hit Antifa in the head if need be," indicating that he was aware of the potential for violence and prepared accordingly. Mr. Winn was part of a group that was tear-gassed by law enforcement in an effort to clear the building; later bragging about being forced from the building in this way while they tried to "stop the vote." *Winn* Gov. Sent. Memo. at 2 ("We were trying to storm them to stop the vote and they

were starting tear gassing and forcing us out"). As Winn left the building, he remarked that "the Patriots" had taken barricades which he and his co-defendant noticed were no longer present. Although it is unclear what Mr. Winn's criminal history category is, it appears that he had been previously convicted of DUI with property damage, battery, and several traffic infractions. *Id.* at 11.

Unlike Mr. Winn, Mr. Sidorski did not come to the Stop the Steal rally armed with anything, nor did Mr. Sidorski express nor indicate in any other way an awareness of the potential for violence nor any willingness to participate in it. Neither did Mr. Sidorski encounter nor brag about encountering any law enforcement tear-gassing in order to expel protestors inside the Capitol. Finally, upon exiting the Capitol, Mr. Sidorski promptly left the area. He did not, like Mr. Winn, "continu[e] to remain … mere feet from [] the bedlam taking place inside the building…" *Id.* at 14.

The vast majority of January 6 cases already disposed of have involved guilty pleas to violations of 40 U.S.C. section 5104(e)(2). This memorandum does not detail each such case. Nonetheless, it should be acknowledged that the conduct at issue in those matters differs only slightly from the conduct at issue here and the vast majority of those cases have received probationary sentences.

<u>Incarceration is Not Required for Deterrence</u>

Prior to his arrest in this matter, Mr. Sidorski had worked at ADESA, a wholesale car auction company, for 20 years, becoming operations manager at a rate of $60/hour. Mr. Sidorski, owned a home in which he, his wife, and their 3 year old daughter, had lived for 14 years.

Mr. Sidorski lost all of that when he was fired as a result of his publicized arrest in this matter. Mr. Sidorski was forced to sell his family's home and move in with his in-laws. He secured employment at Bowling Green County Club, where he works in maintenance making $20/hour. Thus, Mr. Sidorski's decision to involve himself in the events of January 6, has already cost him a great deal. Incarceration is not necessary to serve as any further deterrence.

<u>Mr. Sidorski's History and Characteristics Warrant Leniency</u>

Mr. Sidorski has shared with all of the people in his life his sincere regret at having made the decision to enter the Capitol on January 6. *See* attached character letters.

As the attached character letters attest, Mr. Sidorski is a hard working, kind hearted, family oriented man. Mr .Sidorski coached youth basketball, where he built rapport with the players and parents. When he lost his job at ADESA, Mr. Sidorski promptly took up work in maintenance where he continues to be a dedicated, dependable employee. In addition, Mr. Sidorski's friends and family describe him as someone to whom they turn and on whom they can depend.

Mr. Sidorski's only prior conviction is for DUI nearly 20 years ago. His recently deceased father was a police officer as is Mr. Sidorski's brother.

Mr. Sidorski has proven, through perfect compliance with the conditions of his pretrial release, that he is capable of successful community supervision. For over a year, Mr. Sidorski has complied with every reporting, drug testing, and pre-sentencing processing condition imposed.

**WHEREFORE,** for these reasons and for others to be advanced at the sentencing hearing, counsel submits that a sentence of probation is adequate to serve all of the sentencing goals enunciated in 18 U.S.C. 3553(a).

Respectfully submitted,

_____/s/_____
Nikki Lotze
LOTZE MOSLEY
400 7th Street, N.W.
Suite 206
Washington, DC 20004
(202) 393-0535
NLotze@LotzeMosley.com