**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 1:21-cr-00048 (ABJ)** |
| **v.** | : | |
| | : | |
| **DENNIS SIDORSKI,** | : | |
| | : | |
| **Defendant.** | : | |

<u>**GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM**</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this requested supplemental sentencing memorandum in connection with the above-captioned matter. The government maintains its request that this Court sentence the defendant, Dennis Sidorski, to 12 months' incarceration, 1 year of supervised release, 60 hours of community service, and $500 restitution.

**I.    Introduction**

On May 12, 2022, this Court held a conference call with the parties. *See* MINUTE ENTRY dated 5/12/2022. During that conference call, the Court requested additional sentencing briefing on the following issues:

1.  Whether other cases had been using a United States Sentencing Guideline (U.S.S.G.) base offense level (BOL) of 10 for 18 U.S.C. § 1752(a) offenses, under U.S.S.G. § 2A2.4, or whether base offense level 4, under U.S.S.G. § 2B2.3, had been used;

2.  Whether the determination to use U.S.S.G. § 2A2.4 for the defendant was premised on, completely or in part, the fact the defendant made physical contact with a law enforcement officer outside of the Capitol;

    a.  If so, whether the three-level enhancement for physical contact, under U.S.S.G § 2A2.4(b)(1)(A), would be considered double counting for purposes of calculating total offense level; and

3.  Generally, for comparative purposes, what was the conduct of other 18 U.S.C. §1752(a) defendants.

1

## II.     United States Sentencing Guidelines relating to charges under 18 U.S.C. 1752(a)

To date, most defendants sentenced for violations of 18 U.S.C. § 1752 in connection with the events of January 6, 2021 have been sentenced for violations of § 1752(a)(1) ("Entering and Remaining in a Restricted Building") or § 1752(a)(2) ("Disorderly and Disruptive Conduct in a Restricted Building").[1]   Under the United States Sentencing Guidelines, a defendant convicted of an 18 U.S.C. § 1752 offense is subject to an advisory guideline range under either U.S.S.G. § 2A2.4 (Obstructing or Impeding Officers) or § 2B2.3 (Trespass).   *See* UNITED STATES SENTENCING COMMISSION GUIDELINES MANUAL (2021 edition), at Appendix A.   If more than one Chapter Two Guidelines provision may apply to a particular offense, the court should "use the guideline most appropriate for the offense conduct charged in the count of which the defendant was convicted." U.S.S.G. § 1B1.2 cmt. n.1; *accord* Appendix, Introduction.   The "most appropriate" of the two potentially applicable guideline provisions is the one that best reflects the "offense conduct charged" in the count of conviction. U.S.S.G. § 1B1.2 cmt. n.1; *accord id.* § 1B1.2(a).

Under this standard, one Chapter Two Guidelines provision is appropriate for a violation of 18 U.S.C. § 1752(a)(1), and another Chapter Two Guidelines provision applies to a violation of 18 U.S.C. § 1752(a)(2).   For Section 1752(a)(1), which criminalizes "knowingly enter[ing] or remain[ing] in any restricted building or grounds without lawful authority," the most appropriate Guideline is § 2B2.3, which covers "Trespass."   By contrast, for Section 1752(a)(2), which criminalizes "engag[ing] in disorderly or disruptive conduct" that "in fact, impedes or disrupts the orderly conduct of Government business or official functions," the most appropriate Guideline is § 2A2.4, which applies to "Obstructing or Impeding Officers."   Because a defendant cannot "in

---

[1]Greg Rubenacker (21-cr-193-BAH) was sentenced for a violation of 18 U.S.C. § 1752(a)(4) ("Physical Violence Against Any Person or Property") in addition to §§ 1752(a)(1) and (a)(2), as well as several felony violations.

fact" impede government business without also impeding and obstructing officers—as the defendant here did—U.S.S.G. § 2A2.4 supplies the correct Guideline.

A review of the plea agreements and the government's sentencing memoranda (where available) in Capitol Breach cases in which a defendant pleaded to an offense under 18 U.S.C. § 1752, and in which that offense was the most serious offense of conviction, as well as a review of the Presentence Investigation Reports (PSR) in those cases (where available), confirms that analysis:

A. 18 U.S.C. § 1752(a)(1) Defendants

- BETANCUR, Bryan (Case No. 21-CR-51-TJK) -- BOL 4 (U.S.S.G. § 2B2.3);

- BONET, James (Case No. 21-CR-121-EGS) -- BOL 4 (U.S.S.G. § 2B2.3);

- CORDON, Kevin (Case No. 21-CR-277-TNM) -- BOL 4 (U.S.S.G. § 2B2.3);

- COURTRIGHT, Gracyn (Case No. 21-CR-72-CRC) -- BOL 4 (U.S.S.G. § 2B2.3);

- CUDD, Jenny (Case No. 21-CR-68-TNM) -- BOL 4 (U.S.S.G. § 2B2.3);

- DAUGHTRY, Michael (Case No. 21-CR-141-RDM) -- BOL 4 (U.S.S.G. § 2B2.3);

- EVANS III, Treniss (Case No. 21-CR-225-DLF) -- BOL 4 (U.S.S.G. § 2B2.3);

- FINLEY, Jeffery (Case No. 21-CR-526-TSC) -- BOL 4 (U.S.S.G. § 2B2.3);

- GOLD, Simone (Case No. 21-CR-85-CRC) -- BOL 4 (U.S.S.G. § 2B2.3);

- GRACE, Jeremy (Case No. 21-CR-492-RDM) -- BOL 4 (U.S.S.G. § 2B2.3);

- HERENDEEN, Daniel (Case No. 21-CR-278-BAH) -- BOL 4 (U.S.S.G. § 2B2.3);

- HERNANDEZ, Emily (Case No. 21-CR-747-JEB) -- BOL 4 (U.S.S.G. § 2B2.3);

- HOWELL, Annie (Case No. 21-CR-217-TFH) -- BOL 4 (U.S.S.G. § 2B2.3);

- JOHNSON, Adam (Case No. 21-CR-648-RBW) -- BOL 4 (U.S.S.G. § 2B2.3);

- KNUTSON, Billy (Case No. 22-CR-31-FYP) -- BOL 4 (U.S.S.G. § 2B2.3);

- LENTZ, Nicholes (Case No. 22-CR-53-RDM) -- BOL 4 (U.S.S.G. § 2B2.3);

- MCCREARY, Brian (Case No. 21-CR-125-BAH) -- BOL 4 (U.S.S.G. § 2B2.3);

- NALLEY, Verndon (Case No. 21-CR-16-DLF) -- BOL 4 (U.S.S.G. § 2B2.3);

- O'BRIEN, Kelly (Case No. 21-CR-633-RCL) -- BOL 4 (U.S.S.G. § 2B2.3);

- PERT, Rachel and WINN, Dana (Case No. 21-CR-139-TNM) -- BOL 4 (U.S.S.G. § 2B2.3);

- REED, Blake (Case No. 21-CR-204-BAH) -- BOL 4 (U.S.S.G. § 2B2.3).

- RIDGE IV, Leonard (Case No.. 21-CR-406-JEB) -- BOL 4 (U.S.S.G. § 2B2.3);

- SCHORNAK, Robert (Case No. 21-CR-278-BAH) -- BOL 4 (U.S.S.G. § 2B2.3);

- TRYON, William (Case No. 21-CR-420-RBW) -- BOL 4 (U.S.S.G. § 2B2.3);

- WITCHER, Jeffrey (Case No. 21-CR-235-RC) -- BOL 4 (U.S.S.G. § 2B2.3);

As shown here, convictions under 18 U.S.C. § 1752(a)(1) are consistently sentenced under U.S.S.G. § 2B2.3, and its attendant base offense level of 4.

B. 18 U.S.C. § 1752(a)(2) Defendants

As of June 10, 2022, there has only been one completed sentencing for a defendant in which § 1752(a)(2) was the most serious offense of conviction.[2]   That said, there is still significant guidance from the § 1752(a)(2) cases that are still pending sentencing.  As requested by the Court, a summary of these defendants' conduct is included below.

_____

[2] Greg Rubenacker (21-CR-193-BAH) was also sentenced for a violation of 18 U.S.C. § 1752(a)(2), though the guidelines for that offense were subsumed by the higher guidelines for Rubenacker's numerous felony offenses based on grouping.  *See* Case No. 21-CR-193-BAH, TRANSCRIPT OF SENTENCING HEARING, dated May 26, 2022, at p. 81, ln. 15 – p. 83, ln. 3.   That said, the Presentence Investigation Report listed the applicable guideline for Rubenacker's § 1752(a)(2) conviction as U.S.S.G. § 2A2.4.  *See* Case No. 21-CR-193-BAH, Doc. 52 ("PSR") at ¶ 46.

- MARQUEZ, Felipe (21-CR-136-RC) -- BOL 4 (U.S.S.G. § 2B2.3).

- Conduct: On January 5, 2021, Marquez drove from South Florida up to Washington D.C.  On January 6, 2021, Marquez attended President Trump's rally by the Ellipse.  Afterwards, Marquez made his way to the Capitol.  While outside the Capitol, he recorded himself encouraging others to climb the wall on the west side of the building.  Marquez breached the Senate Wing doors only 20 seconds after they initially had been forced open.  Once inside, Marquez filmed several clips with his cell phone chanting "USA!" and "Woo-hoo!" Marquez repeatedly attempted to "fist-bump" officers, even tapping an officer's shoulder to try and get his attention.  Marquez made his way from the Senate Wing doors foyer to the office of Senator Merkley with at least 20 other rioters.  He filmed himself and others in the office, including his own use of a vape pen for smoking.  After about 10 minutes, Marquez made his way to the Crypt, where he cheered on other rioters.  He was also seen by the House Wing door, the Hall of Columns, and again by the Senate Wing doors.  He spent nearly an hour in the building.  After being escorted out, Marquez gave two thumbs up to the crowd outside.  After leaving the Capitol grounds and returning home to Florida, Marquez filmed a YouTube video admitting to the Capitol breach, and joyfully rapping about it.  At the time of his arrest, Marquez admitted to going in the Capitol and that he did so to, amongst other things, "protest communism."  *See* Case No. 21-CR-136-RC, Doc. 28 ("Sentencing Memorandum"), at 2-15.

The plea agreement in the *Marquez* case included a stipulation that U.S.S.G. § 2B2.3, and its Base Offense Level 4, was the applicable Chapter Guideline.  That was an error, which the government admitted in its sentencing memorandum in that case.  *See* Case No. 21-CR-136-RC, Doc. 28 ("Government's Sentencing Memorandum"), at p. 18, n.6 (noting that "[b]ecause the government agreed in the plea agreement that U.S.S.G. § 2B2.3 is the applicable Guideline here, we do not object to its use in this case. Upon further review of the applicable law and principles, however, the government has concluded that U.S.S.G. § 2A2.4 is the appropriate Guideline for a violation of 18 U.S.C. § 1752(a)(2).").

- LYON, Robert (21-CR-161-RBW) – Sentencing set for July 21, 2022. *See* Case No. 21-CR-161-RBW, Doc. 95.

- Conduct: On January 5, Lyon and a friend drove from Columbus, Ohio, to Silver Spring, Maryland.  On January 6, 2021, Lyon attended President Trump's rally by the Ellipse.  Afterwards, he and the friend made their way to the Capitol, and entered the building at 2:56 p.m.  Once inside, they went inside the Senate

Parliamentarian's office.  While in that office, Lyon's friend stole a coat rack.  At 3:01 p.m., the two men left the Capitol, taking the coat rack with them.  At 4:03 p.m., Lyon texted his friend when they became separated. The message stated: "We need to get the fuck out with this trophy." At the time, Lyon had the coat rack with him.  His friend replied: "Follow the tear gas n ill [sic] find me." Lyon said: "I'm fighting people of [sic]. Lyon's friend texted: "Leave by the tree let's g0" [sic]. Lyon replied: "Im bout to get shot or arrested for this bs. People WANT IT."  The friend replied: "Going inside" and "Sell it $500". Lyon replied: "Some girl died already," to which the friend replied: "Was it Pelosi?" After his arrest, during an interview with the FBI, Lyon denied having entered the Capitol.  *See* Case No. 21-CR-161-RBW, Doc. 65 ("Statement of Offense"), at 3-6.[3]

Though the PSR has yet to be issued in this case, in the plea agreement, the parties agreed that U.S.S.G. § 2A2.4, and its Base Offense Level 10, is the applicable Guideline for the case.  *See* Case No. 21-CR-161-RBW, Doc. 64 ("Plea Agreement"), at 3.

- BAGGOT, Matthew (21-CR-411-APM) – Sentencing set for August 5, 2022. *See* Case No. 21-CR-411-APM, MINUTE ENTRY dated April 5, 2022.

- Conduct: On January 6, Baggot flew from Nashville, Tennessee, to Washington D.C. for the purpose of protesting Congress' certification of the Electoral College vote.  Baggot made his way to the Capitol amongst the rest of the mob.  At one point, he threw an object at the law enforcement officers that were stationed outside of the Capitol.  At approximately 2:13pm, Baggot entered the Capitol and was among the first wave to enter the building.  Baggot remained in the building nearly 45 minutes, traveling through various areas, including the Ohio Clock Corridor, the Crypt, the Rotunda, and Statutory Hall.  At one point, while exiting a corridor, the defendant grabbed an officer's baton that was in the officer's hand.  Baggot did not take it from him though. *See* Case No. 21-CR-411-APM, Doc. 50 ("Statement of Offense"), at 3-4.[4]

Though the PSR has yet to be issued in this case, in the plea agreement, the parties agreed that U.S.S.G. § 2A2.4, and its Base Offense Level 10, is the applicable Guideline for the case.  *See* Case No. 21-CR-411-APM, Doc. 49 ("Plea Agreement"), at 3.

---

[3] The government has yet to file a sentencing memorandum in this case, nor has a final PSR been issued.  Thus, all facts listed here were summarized from Lyon's Statement of Offense.

[4] The government has yet to file a sentencing memorandum in this case, nor has a final PSR been issued.  Thus, all facts listed here were summarized from Baggot's Statement of Offense.

- BROMLEY, Phillip (21-CR-250-PLF) – Sentencing set for June 22, 2022. *See* Case No. 21-CR-161-RBW, MINUTE ENTRY dated June 7, 2022.

- Conduct: In the interim period between the November 2020 election and January 6, 2021, Bromley repeatedly texted family and friends statements and images regarding the nation being "at war" using violent language and imagery. On January 2, 2021, Bromley texted a friend: "We are moving the line forward on [January 6]. They don't have enough police or bullets to stop us. Long live our republic and all glory/victory to GOD." He texted another person that day that he may not "come back alive" from Washington D.C. On January 4, 2021, Bromley and his cousin drove from Alabama up to Washington D.C. On January 6, 2021, he texted that there would be a "fight coming today." Bromley attended President Trump's rally by the Ellipse. Afterwards, he and the cousin made their way to the Capitol and were two of the first people to arrive at the front House doors. As four officers moved between the rioters and the doors, Bromley joined others in screaming at them – including, "honor your oath!" Some of the rioters in this initial crowd began to attack the officers, including Bromley's cousin, who used a flagpole to strike an officer. The outnumbered officers retreated inside the Capitol and shut the doors. Bromley reached in his pocket and handed his cousin a metal baton, which the cousin used to beat the windows and doors with. The doors were later opened from the inside by other rioters, at which point, Bromley made entry. Bromley immediately made his way to the Speaker's Lobby, and witnessed Ashli Babbitt being fatally shot there. He stayed in the area for nine minutes, then was forced out of the building by police officers. After his arrest, during his interview with FBI, Bromley made several self-serving statements that were contradicted by CCTV recordings of his conduct at the Columbus Doors. *See* Case No. 21-CR-250-PLF, Doc. 42 ("Sentencing Memorandum"), at 1-17.

In the plea agreement, the parties agreed that U.S.S.G. § 2A2.4, and its Base Offense Level 10 is the applicable Guideline section for the case. *See* Case No. 21-CR-250-PLF, Doc. 37 ("Plea Agreement"), at ¶ 5. Moreover, the final PSR concurs with the parties regarding the applicable Guideline section. *See* Case No. 21-CR-250-PLF, Doc. 48 ("Presentence Investigation Report"), at ¶ 45. Indeed, the United States Probation Office stated in the PSR that "[t]he guideline for 18 USC § 1752(a)(2) offense is found in U.S.S.G. § 2A2.4 of the guidelines. That section provides that an offense involving instructing or impeding officers has a base offense level of 10." *Id.*

In sum, the government and the US Probation Office have come to the same conclusion regarding offenses under 18 U.S.C. §§ 1752(a)(1) and (a)(2).

Here, Sidorski pleaded guilty to violating § 1752(a)(2), that he knowingly engaged in disruptive conduct that "in fact" impeded and disrupted government business. *See* ECF Docs. 35 (Plea Agreement) & 36 (Statement of Offense).  Because a defendant cannot "in fact" impede government business without also impeding and obstructing officers—as Sidorski did here—the most appropriate guideline is U.S.S.G. § 2A2.4, as the parties have agreed in the plea agreement. Under § 2A2.4, the base offense level in this case is 10.

### III.    The defendant's physical contact with a law enforcement officer

As indicated above, the determination that the appropriate Guideline for a violation of 18 U.S.C. § 1752(a)(2) is U.S.S.G. § 2A2.4 is predicated upon the "offense conduct charged." U.S.S.G. § 1B1.2 cmt. n.1.  It follows that Sidorski's physical contact with a police officer is not relevant to the determination of the applicable Chapter Two Guideline provision. The defendant's physical conduct with a police officer does, however, give rise to a three-level adjustment under § 2A2.4(b)(1)(A).

Nor does the three-level adjustment amount to "double counting."  Double counting does not arise "if the enhancement does not duplicate an essential element of the offense." *United States v. Valdez-Torres*, 108 F.3d 385, 389 (D.C. Cir. 1997).  Indeed, "[i]n the absence of a caveat that the enhancement does not apply in these circumstances, [the court] would ignore the plain language of the Guidelines were [it] not to apply the enhancement here." *Id.*  Here, the essential elements of § 1752(a)(2) ("Disorderly and Disruptive Conduct in a Restricted Building") are as follows:

(1) First, that the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds;

(2) Second, that the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions; and

(3)  Third, that the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

*See* 18 U.S.C. § 1752(a)(2); Final Jury Instructions, *United States v. Webster*, 21-cr-208 (APM). Physical contact is thus not an element for a violation of Section 1752(a)(2).  Thus, the imposition of the additional three-level enhancement for physical contact under U.S.S.G. § 2A2.4 is appropriate here and should be imposed.

## IV.  Conclusion

The government recommendation is that this Court sentence Dennis Sidorski to 12 months' incarceration, one year of supervised release, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his early acceptance of responsibility.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Jeffrey Q. McCarther*
JEFFREY Q. MCCARTHER
Assistant United States Attorney
Missouri Bar No. 62224
Detailee – Federal Major Crimes
U.S. Attorney's Office
District of Columbia
Jeffrey.McCarther@usdoj.gov
(816) 426-3122