IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES** | : | |
| | : | **Criminal No. 1:21-cr-00048 (ABJ)** |
| v. | : | |
| | : | |
| **DENNIS SIDORSKI** | : | |

<u>DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM</u>

Dennis Sidorski, through undersigned counsel, respectfully submits the following supplemental sentencing memorandum. At a remote status hearing held May 12, 2022, the Court invited briefing on the following issues, as counsel understood them:

1. the reason for the parties' agreement regarding the application of U.S.S.G. section 2A2.4 for "obstructing or impeding officers," which assigns a base offense level (BOL) of 10; instead of U.S.S.G. 2B2.3 for "trespass," which assigns a BOL of 4;

    a. which U.S.S.G. BOL section has been used by other courts in connection with pleas to 18 U.S.C. 1752;

    b. the reason for the parties' agreement to apply U.S.S.G. section 2A2.4 in *United States v. Aaron Mostofsky,* 21-cr-138 (JEB);

2. whether application of section 2A2.4(b)(1)(A)'s 3 point enhancement would constitute double counting, *i.e.,* if the reason for the application of 2A2.4's increased BOL is Mr. Sidorski's alleged physical contact with an officer, does an additional 3 point enhancement for that physical contact punish Mr. Sidorski twice for the same conduct?

These issues are addressed below.

**The Parties' Stipulation in the Instant Matter Regarding Application of 2A2.4 for "Obstructing or Impeding Officers," With its Base Offense Level (BOL) of 10**

The parties negotiated a resolution of this matter which included application of U.S.S.G. section 2A2.4. In the course of that negotiation, undersigned counsel sought an alternative stipulation that U.S.S.G. section 2B2.3 for "trespass," (BOL 4), be applied.

However, the Government insisted upon inclusion of the agreement to apply section 2A2.4. The Government explained that it required this concession due to evidence that Mr. Sidorski for a 3 second period placed his left hand on an officer's left shoulder and arm amidst a jostling shoving crowd outside the Capitol Building.

Thus, the plea agreement negotiated by the Parties already accounts for and punishes Mr. Sidorski's "obstruction of or impeding" an officer. Application of section 2A2.4(b)(1)(A)'s 3 point enhancement therefore would constitute double counting since the justification for application of 2A2.4's increased BOL, was Mr. Sidorski's alleged physical contact with an officer. An additional 3 point enhancement for that same physical contact punishes Mr. Sidorski twice for the same conduct.

*United States v. Aaron Mostofsky,* **21-cr-138 (JEB)**

Parties in the case of *United States v. Aaron Mostofsky,* 21-cr-138 (JEB), also agreed to the application of U.S.S.G. section 2A2.4 for "obstructing or impeding officers," which assigns a base offense level (BOL) of 10; instead of U.S.S.G. 2B2.3 for "trespass," which assigns a BOL of 4.

Unlike Mr. Sidorski's matter, there was abundant evidence that Mr. Mostofsky physically obstructed or impeded officers: Mr. Mostofsky "forcibly pushed against officers who were attempting to adjust barriers in the West Terrace area to keep rioters from entering the Capitol building." *U.S. v. Mostofsky,* 21-cr-138 (JEB), Gov. Sent. Memo [100] at 2. Mr. Mostofsky

"join[ed] in a riotous push against the police lines guarding the Capitol," thereby "not only ignor[ing] police commands, but physically def[ying] them." *Id.* at 2.

Specifically,

> At approximately 1:35 p.m., in the West Plaza, a group of rioters pushed against a police line that was attempting to adjust a barrier to provide additional space between the crowd of rioters and the Capitol Building, and limit the crowd's access to the Capitol. The defendant joined that group, impeding the efforts of U.S. Capitol Police and Metropolitan Police Department officers to protect the Capitol. Surveillance footage from the roof of the Capitol Building, as well as footage from another member of the crowd, reveals that the defendant was not up against the police line when officers tried to move the fence. Instead, he joined a group of rioters who were resisting the police, intentionally lending his weight and strength to the effort to break through the police line. He was not forced into the line by other rioters, and his conduct was not involuntary, an accident, or a mistake.

*U.S. v. Mostofsky,* 21-cr-138 (JEB), Statement of Offense [94] at p. 4, para 10.

In addition, Mr. Mostofsky "stole protective gear, a Capitol Police bullet-proof vest and a riot shield, leaving police officers who might have used those items more vulnerable during the violent attack at the U.S. Capitol. *Mostofsky* Gov. Sent. Memo at 2.

The sole 3 second instance during which Mr. Sidorski's left hand came into contact with an officer's left shoulder and arm, while the two were amidst a jostling shoving crowd outside the Captiol Building, is in an entirely different league from the above cited abundant evidence that Mr. Mostofsky obstructed and impeded officers. Nonetheless, like Mr. Mostofsky, Mr. Sidorski was required to stipulate to the application of U.S.S.G. section 2A2.4's BOL 10.

In so stipulating, Mr. Sidorski accepted responsibility for the sole 3 second instance during which he arguably obstructed or impeded an officer. A 3 level enhancement for the same conduct is not warranted under the circumstances and would constitute impermissible double counting.

Moreover, there are myriad aggravating factors present in Mr. Mostofsky's case – all absent in Mr. Sidorski's -- which suggest that to avoid unwarranted sentencing disparities, Mr. Sidorski

ought to receive a far more lenient sentence than Mr. Mostofsky's sentence of eight months' incarceration.

First, in addition to the 1752(a)(1) violation, Mr. Mostofsky pled guilty to theft of Government property and civil disorder. Mr. Sidorski's only offense of conviction is for violation of 1752(a)(2).

In addition, Mr. Mostofsky "forcibly and intentionally engaged" in at at least two physical skirmish with law enforcement, lending his body to assist in pushing a police barrier. *Mostofsky* Gov. Sent. Memo at 15. After fist bumping other rioters engaged in helping to push the police barrier, Mr. Mostofsky then joined other rioters to impede officers shouting "Move back, move back." *Id.* at 16. In contrast, Mr. Sidorski walked into the Capitol building without directly encountering any officer(s) apart from the 3 second touching of an officer's shoulder outdoors.

In addition, Mr. Mostofsky was the 12th person to breach the Senate Wing door. "That is, Mostofsky watched other rioters violently break open windows and kick open doors to the Capitol, and took advantage of that property destruction to enter the building. An hour earlier, Mostofsky was amongst the first to breach Peace Circle." *Id.* at 35. In contrast, Mr. Sidorski entered the Capitol Building much later and therefore was not in a position to watch other rioters violently break open windows and kick open doors.

Moreover, at one point Mr. Mostofsky used his animal fur cloak to shield his face from chemical irritants as he moved forward to engage officers together with other rioters. *Id.* at 17. There is no evidence that Mr. Sidorski was ever close enough to officers using chemical irritants to have felt the effect of any such irritants; much less that Mr. Sidorski protected himself in order to persevere in the face of such an obvious effort by law enforcement to deter the rioters.

4

All of the above conduct reveals Mr. Mostofsky's conduct to be far and away more dangerous, violent, and directly confrontational than that of Mr. Sidorski. The only way to avoid sentencing disparity between them is to grant Mr. Sidorski a probationary sentence.

### *United States v. Felipe Marquez,* 21-cr-136 (RC)

As far as counsel is aware, the only other case stemming from the events of January 6, 2021, which has resulted in a guilty plea to 18 U.S.C. 1752(a)(2), is *United States v. Felipe Marquez,* 21-cr-136 (RC). In Mr. Marquez' matter, the parties agreed to the application of U.S.S.G. 2B2.3(a)'s BOL of 4, for trespassing. However, the Government noted in its sentencing memorandum that after entering into its agreement with Mr. Marquez, the Government "concluded that U.S.S.G. section 2A2.4 is the appropriate Guideline for a violation of 18 U.S.C. section 1752(a)(2)." *Marquez* Gov. Sent. Memo [28] at p.18 n.6.

Mr. Marquez had the benefit of the Government's concession to apply the more lenient of the two applicable guidelines. Nonetheless, he was sentenced to a period of probation despite the following facts, all of which put Mr. Marquez' matter in a far more serious, dangerous, and aggravated posture than is Mr. Sidorski's.

First, Mr. Marquez drove to D.C. on January 5, 2021, having recorded his placement of a Glock firearm in the trunk of his car. *Id.* at 3. Mr. Marquez entered the Capitol Building 20 seconds after a mob overpowered the line of officers who had been physically keeping the mob from entering the Senate Wing door. *Id.* at 4. As Marquez entered the Senate Wing, other rioters were climbing through the windows. *Id.* at 4-5. Marquez then recorded himself *tapping on the arm* of one among a line of officers that had formed to keep rioters from penetrating further into the building, asking the officer for a "fist bump." *Id.* at 6 (emphasis added).

This recorded brief physical contact between Marquez' hand and the officers left arm and shoulder, is similar to the brief contact between Mr. Sidorski's hand and an officer's arm except that there is no question that Mr. Marquez intended the contact between his hand and the officer's arm, where because of the jostling shoving crowd, it is not at all clear that the Government could prove that Mr. Sidorski intended the contact. Thus, not only is it the case that Mr. Marquez engaged in far more dangerous, arrogant, and offensive behavior than did Mr. Sidorski; Mr. Marquez *also,* like Mr. Sidorski, engaged in a brief instance of benign physical contact with an officer. It would be a gross sentencing disparity if Mr. Sidorski were to receive a more severe sentence than Mr. Marquez under the circumstances.

After tapping on the officer's arm, Marquez then entered senator Merkley's hideaway office where he sat at the senator's conference table and filmed himself smoking his vape pen and watching other rioters destroy property. *Id.* at 9. Marquez later filed himself cheering and screaming as rioters roamed about the Crypt, among other things admitting in one of the videos that "we only broke a couple windows." *Id.* at 11. Mr. Marquez did not leave the Capitol until 3:40 -- about an hour after he entered -- when he was escorted out by police.

Following the riot Marquez posted on social media, among other things a video entitled "My thoughts on the word Coon, while driving back from the DC protest." *Id.* at 13. In addition, Mr. Marquez posted an "It wasn't me" video on YouTube containing many lies about his participation in the events at the Capitol, (*id.*), and later lied to law enforcement about the extent of his involvement in the events. *Id.* At p.8 n.3 (for example, the selfie video taken by Marquez belied his statement to FBI that he did not like that people were smoking in the office, and that is why he was recording them. Marquez told the FBI that he asked others, "Why are you smoking?" when his own video shows him glorifying the smoking)

After being arrested and released in connection with the January 6 matter, Mr. Marquez violated a Court Order to relinquish all firearms to U.S. Probation. *Id.* at 16.  Specifically, Mr. Marquez signed his firearms over to his roommate, creating "an end-run around what the Government and the Court were concerned about: Marquez having ready access to firearms." *Id.* at 16.  In addition, while his case was pending, Marquez was stopped by Florida police at a public shopping mall, to which he had brought a gun in a firearms case with the word "GLOCK" written on it. *Id.* At 16-17.  Marquez explained to law enforcement that he brought the gun into the public shopping mall in protest of the suspension of his concealed carry weapon license. *Id.*.

There are myriad differences between the *Marquez* matter and Mr. Sidorski's which highlight Mr. Sidorski's diminished culpability.  First, Mr. Sidorski did not bring a gun to Washington, D.C., nor did he violate court Orders so that he could continue to possess weapons during the pendency of his matter.  Unlike Mr. Marquez, who entered the building 20 seconds after law enforcement retreated and while others were climbing through a window, there is no evidence that Mr. Sidorski's entry was at a time when he would have seen the breach of any law enforcement line.

Moreover, unlike the destruction of property which Mr. Marquez himself videoed, there is no evidence that Mr. Sidorski observed anyone destroying property while he was in the Capitol Building, much less that he sought to arrogantly show his own and fellow rioter's disrespect of important offices by filming himself vaping at a senator's conference table while rioters broke lamps, etc., around him.

The flagrancy and arrogance with which Mr. Marquez both flouted the Court's Orders and refused to take responsibility during the pendency of his matter also stand in stark contrast to Mr. Sidorski's conduct.  Mr. Sidorski obeyed all Court Orders, even calling the law enforcement

7

officer who arrested him when Mr. Sidorski was otherwise unable to determine how to get to what he thought was an early in-person court appearance. After January 6, 2021, Mr. Sidorski posted nothing on social media celebrating his involvement.

Mr. Sidorski never minimized nor lied about his involvement in the events of January 6, 2021. On the day of his arrest, Mr. Sidorski spoke at length with police, speaking among other things about his sincere regret at having been involved in the events of January 6. Also on the day of his arrest, Mr. Sidorski gave his phone to police; opened it for them to see, and showed police the videos he himself had taken of the events on January 6. While Mr. Sidorski was processed and appeared in Court, he allowed law enforcement to keep his phone, which police later returned to Mr. Sidorski's wife. Subsequently, at the Government's request, Mr. Sidorski met again with law enforcement to discuss both his Facebook and Parler accounts.

In light of all of these factors which render Mr. Marquez' conduct far and away more egregious than Mr. Sidorski's, it would be a wholly unwarranted disparity for Mr. Sidorski to be sentenced to any term of incarceration while Mr. Marquez received a probationary sentence.

**WHEREFORE,** for these reasons and for others to be advanced at the sentencing hearing, counsel submits that a sentence of probation is adequate to serve all of the sentencing goals enunciated in 18 U.S.C. 3553(a).

Respectfully submitted,

_____/s/_____
Nikki Lotze
LOTZE MOSLEY
400 7th Street, N.W.
Suite 206
Washington, DC 20004
(202) 393-0535
NLotze@LotzeMosley.com